**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| FIBER SYSTEMS INTERNATIONAL, INC. | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:06-CV-473 |
| | § | |
| APPLIED OPTICAL SYSTEMS, INC. | § | |

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned issues the following proposed findings of fact and recommended disposition concerning the plaintiff's motion for preliminary injunction.

## PROPOSED FINDINGS OF FACT

1.     Fiber Systems International, Inc. ("FSI") is the owner of all right title and interest of U.S. Patent No. 6,305,849 ("the '849 patent"). FSI manufactures and sells a fiber optic connector known as the TFOCA-II connector. The TFOCA-II connector was developed in conjunction with the United States Army Communications-Electronics Command. It is a harsh environment fiber optic connector designed for military tactical deployable network applications. The connector also has commercial applications.

2.     In late 2003, one of the named inventors on the '849 patent, along with other former executives of FSI, formed Applied Optical Systems, Inc. ("AOS"). The parties to this case have been involved in numerous lawsuits arising out of a dispute between the two brothers who originally formed FSI, Michael and Daniel Roehrs.

3.     Since late 2005, AOS has manufactured and sold TFOCA II-style connectors in competition with FSI ("AOS connectors" or "accused products"). AOS markets its accused products to commercial entities, as well as entities and contractors who purchase the products for military use.

4.      AOS does not contest, for purposes of the preliminary injunction, that the accused connectors infringe claims 1-6 of the '849 patent.

5.      The United States Patent and Trademark Office ("USPTO") has granted a reexamination request covering claims 1-6 of the '849 patent.

6.      AOS contends that the vast majority of its sales are exempt pursuant to 28 U.S.C. § 1498(a) because they are for the Government with the authorization and consent of the Government.  AOS does not dispute, however, that it also markets and sells its connectors to other non-governmental entities.  Based on the evidence submitted by AOS, it appears that AOS sold, through November 30, 2006, at least 98% of its accused connectors to companies that are defense contractors.  These include, but are not limited to, Raytheon, Northrop Grumman, and General Dynamics.  *See* First Declaration of Thomas Hazelton, Jr. at ¶¶ 27-30.  The remaining approximately 1.5% of the connectors were sold to non-defense contractor customers.

7.      For purposes of the application for preliminary injunction, the parties focus on AOS's marketing to Northrop-Grumman, Raytheon, Moog, and General Dynamics.  *See* Plaintiff's Application for Preliminary Injunction at 25.  Because AOS has not sold any connectors to Moog, *see* Second Hazelton Declaration at ¶ 13, the court will focus on the remaining three entities.

8.      With respect to Raytheon, the purchase orders issued from Raytheon to AOS incorporate the authorization and consent provision found in 48 C.F.R. § 52.227-1.  Likewise, the General Dynamics Contract Provisions used in a bid solicitation directed toward AOS incorporate the same authorization and consent provision.

9.     AOS must comply with certain government specifications when selling its connectors to its defense contractor customers.  These include the Optical Interface Specification and Specification A3302584, revision B.  In addition, the United States, through the Defense Logistics Agency, has formed a working group that includes representatives of manufacturers and suppliers to promulgate revisions to specifications covering TFOCA-II style connectors.  The Defense Supply Center of the Defense Logistics Agency has issued certain draft specifications pursuant to this effort.  These include MIL-DTL-83526/16 and MIL-DTL-83526/17.  Those specifications have not been formally adopted.  They are, however, publicly available and are published by the Defense Supply Center.

10.     On October 20, 2005, FSI's attorneys notified AOS's attorneys that AOS's manufacture of products purporting to meet the draft specifications infringes FSI's patent rights, including the '849 patent.

11.     On December 9, 2005, FSI filed a Verified Petition for an Order Authorizing the Taking of a Deposition Before Suit.  In that Petition, FSI urged that it had learned that AOS had apparently begun to manufacture and market fiber optic connector systems that met the draft specifications and that FSI "believed that any such systems necessarily infringe the Patents."

12.     FSI has been negotiating with the United States for a royalty-free license to the '849 patent. The United States thus has some knowledge of the patent and that TFOCA-II style connectors which meet the draft specifications would infringe the patent.

13.     Although AOS has offered some evidence that its sales to Raytheon, General Dynamics, and Northrop Grumman were "for the Government," AOS has not established which connectors sold to Raytheon, General Dynamics, and Northrop-Grumman were ultimately delivered to and accepted by the Government.

14.     AOS has not established whether the underlying contract between Raytheon, General Dynamics, or Northrop-Grumman, on the one hand, and the United States, on the other hand, contained an authorization and consent provision covering the purchase of TFOCA-II style connectors.

15.     AOS's connectors which are actually supplied to the Government must comply with the Government's specifications, including but not limited to the draft specifications MIL-DTL-83526/16 and MIL-DTL-83526/17.  *See* Tr. at 23-24 (Dkt. No. 107).

16.     For purposes of the preliminary injunction inquiry, connectors made in compliance with draft specifications MIL-DTL-83526/16 and/or MIL-DTL-83526/17 infringe claims 1-6 of the '849 patent.

## RECOMMENDED CONCLUSIONS OF LAW AND DISPOSITION

1.     The prerequisites for a preliminary injunction are (1) the plaintiff has a reasonable likelihood of success on the merits; (2) the plaintiff has suffered irreparable injury; (3) the balance of the hardships weighs in favor of the injunction; and (4) the public interest would not be disserved by the injunction.  *Abbott Labs. v. Andrx Pharm., Inc*., 452 F.3d 1331, 1334 (Fed. Cir. 1993).

2.     In a patent infringement suit, to demonstrate a likelihood of success on the merits, the plaintiff must show that it will likely prove infringement of one or more claims and that at least one of those same allegedly infringed claims will also likely withstand an invalidity challenge.  *Wireless Agents LLC v. Sony Ericsson Mobile Communications*, 390 F. Supp. 2d 532, 535 (N.D. Tex. 2005). A defendant can defeat a motion for preliminary injunction by showing a substantial question with respect to infringement or validity.  *See Abbott Labs*., 452 F.3d at 1335.

3.    For purposes of the preliminary injunction application, AOS has not contested the infringement issue.  In addition, the court is not persuaded that AOS has raised a substantial question of invalidity.   AOS points to the grant of a request for reexamination.  But this evidence does not raise a substantial question of invalidity. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996)("We take notice that the grant by the examiner of a request for reexamination is not probative of unpatentability.").  AOS also argues, relatedly, that the asserted claims are obvious.  AOS tenders no supporting evidence, however, beyond pointing to the reexamination request, that would support a finding that the claims are likely obvious.  As such, the court concludes that FSI has demonstrated a likelihood of success on the merits.

4.    FSI has also established irreparable injury.  In light of the finding of likelihood of success on the merits, the adverse impact the defendant's sales will have on the plaintiff's business leads the court to conclude that money damages are inadequate to compensate for the infringement.  This is particularly true given the parties' status as competitors in the same market.  Moreover, it is not disputed that AOS markets the accused products to non-governmental entities.

5.    The court concludes that the balance of hardships favors FSI in this case and that the public interest favors a preliminary injunction.

6.    As a matter of law, the preliminary injunction excludes all sales covered by 28 U.S.C. § 1498(a).   *W.L. Gore & Associates v. Garlock, Inc.*, 842 F.2d 1275, 1281-83 (Fed. Cir. 1988)("[Section] 1498 is paramount when the making is for or the selling is to the United States Government and the injunction is necessarily subject to that condition whether it says so or not."). That section provides:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a).

7.    Section 1498(a) relieves a third party from patent infringement liability, and it acts as a waiver of sovereign immunity and consent to liability by the United States. *Madey v. Duke Univ.*, 307 F.3d 1351, 1359 (Fed. Cir. 2002). The statute operates as an affirmative defense to liability when the contractor or subcontractor's use of a patented invention is for the  and with the authorization and consent of the . *See Madey*, 307 F.3d at 1359-60. To claim the benefit of § 1498, the private party must establish that its use is (1) for the Government and (2) with the authorization or consent of the Government. *Madey v. Duke Univ.*, 413 F. Supp. 2d 601, 607 (M.D.N.C. 2006). A use is "for the Government" if it is in furtherance and fulfillment of a stated government policy which serves the Government's interests and which is for the Government's benefit. *Id.* (internal citations and quotations omitted). A use is "with the authorization and consent of the Government" if the Government either expressly or impliedly consents to the alleged infringement by the contractor or subcontractor. *Id.*

8.    Consent is express when the Government contract contains an authorization and consent clause or incorporates the provision found in 48 C.F.R. § 52.227-1. That provision provides:

> The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered

by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the under this contract or (2) used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written instructions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance.

48 C.F.R. § 52.227-1.

9.     Consent may be implied when (1) the Government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the Government had some knowledge of the infringement. *Madey*, 413 F. Supp. 2d at 609.

10.    Because § 1498 is an affirmative defense, the burden is on AOS to show the existence and extent of any Government use and authorization. *See Madey*, 413 F. Supp. 2d at 609. At this stage of the proceedings, application of the defense provided by 28 U.S.C. § 1498(a) is unclear. Although the First Declaration of Thomas Hazelton, Jr. states that approximately 98.48% of AOS's TFOCA-II style connectors through November 30, 2006 "are for use by the United States Government," the record is unclear that all of the accused products sold to AOS's "defense contractor" customers were actually delivered to, or intended to be delivered to, the Government. As a result, despite Mr. Hazelton's testimony, AOS has not sufficiently established, at this time, whether its connectors were used "for the United States."

11.    With respect to express consent, although the Raytheon purchase orders (as well as the General Dynamics solicitation) incorporate 48 C.F.R. 52.227-1, it is unclear whether the procurement contracts between the United States and Raytheon and/or General Dynamics likewise incorporate the authorization and consent regulation. As a result, the defendant has not established that the United States has expressly consented to the infringement.

12.     Implied consent exists, however, with respect to any TFOCA-II style connectors actually delivered to the United States or purchased by defense contractors for delivery to the United States in the future.  The Government has required its contractors to meet various specifications in the past.  Moreover, under this record, the Government is and will require compliance in the future with the draft specifications applicable to TFOCA-II style connectors.  Under this record, and particularly in light of FSI's prior positions, the draft specifications cannot be met without infringement.  Finally, the Government has some knowledge of the infringement, given the negotiations with FSI concerning a royalty-free license to the patent.

13.     The court should issue a preliminary injunction against future sales of the defendant's accused products.  However, under 28 U.S.C. § 1498(a), the scope of the injunction exempts future sales of those products that are actually delivered to and accepted by the Government or purchased by government contractors for future delivery to the Government.  The precise extent of such past sales is not borne out by this record, and the burden of establishing the extent of any exempt future sales should be placed on AOS in any contempt proceeding.  The court recommends that bond be set in the amount of $250,000.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.  *Douglas v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

SIGNED this 12th day of March, 2008.

CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE